57 CCPA

**Application of Leslie D. MOORE.**

Patent Appeal No. 8316.

United States Court of Customs
and Patent Appeals.

Sept. 3, 1970.

Charles W. B. Connors, Richard L. Johnston, Chicago, Ill. (Marzall, Johnston, Cook & Root, Chicago, Ill.), attorneys of record, for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents, Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and FISHER, Chief Judge, Eastern District of Texas, sitting by designation.

BALDWIN, Judge.

Moore appeals from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–4 of his application[1] as obvious under 35 U.S.C. § 103 over Young[2] in view of Ipatieff[3] and Plummer.[4] Claims 2–4 were also rejected as "unduly broad" under 35 U.S.C. 112.

## THE INVENTION

The invention relates to the process of producing isopropanol by the hydration of propylene with water in the presence of a sulfonic acid cation exchange resin catalyst. According to appellant's specification, this process is "well-known," and its parameters "have been explored in detail." For example, it is said to be known that by varying certain conditions, such as process temperature, pressure and flow rates, it is possible to "select a given starting conversion level which determines the amount of isopropanol initially produced by the process." However, it also appears to be known to the prior art that, when the process is operated for extended periods of time, the conversion level tends to diminish, and that this decrease is probably due to the deactivation of the resin by loss of sulfonic acid groups. The specification indicates that it would be beneficial to maintain conversion levels constant and mentions that one attempt to accomplish this, by chemically regenerating the activity of the catalyst, has not proved to be very practical. Appellant asserts that he has devised a method of carrying out the process whereby conversion rates are maintained at constant levels while at the same time the overall efficiency of the process is "greatly increased." This is accomplished, according to the disclosure:

\* \* \* by the expediency of incrementally increasing the temperature of the reaction throughout the process, which increase is determined by the application of the following equation:

$$\frac{\Delta T}{D} = \frac{0.00007 \, (c^3) \, (v)^2}{\left(\frac{P}{1,000}\right)^2}$$

where

$c$ = conversion level in mole %

$v$ = liquid hourly space velocity of propylene

$P$ = pounds per $in^2$ (gauge)

$D$ = days

$T$ = temperature in °F., and $\frac{\Delta T}{D}$ is the daily temperature increase in °F., to maintain a selected conversion level. [A 2631]

By application of the above equation, it is possible to continuously convert propylene and water to isopropanol at a given conversion level and have this conversion level maintained throughout a long period of time before it is necessary to shut down the process for purposes of replenishing the sulfonic acid cation exchange resin catalyst.

Claim 1 reads as follows:

1. In a process for producing isopropanol by the liquid phase hydration of propylene with water in the presence of a sulfonic acid ion exchange resin catalyst whereby operative pressures, liquid hourly space velocities,

1. Ser.No.312,306, filed Sept. 30, 1963, entitled "Catalytic Process."

2. U.S. Patent 2,813,908, granted Nov. 19, 1957.

3. Ipatieff, "Catalytic Reactions," p. 3 (1936).

4. U.S. Patent 2,335,610, granted Nov. 30, 1943.

and starting reaction temperatures in excess of 250°F. are selected to provide a given conversion level, and the process is continuously operated to produce isopropanol, the improvement which comprises incrementally increasing the reaction temperature until it is at about 450°F., with such incremental temperature increases being sufficient to substantially maintain the starting conversion level.

Claim 2 adds the limitation that the time and temperature increases are to be established by the formula indicated above, and claims 3 and 4 recite various limiting values to be used for the variables of the formula set out in claim 2.

## THE PRIOR ART

The patent to Young contains a broad description of the basic hydration process to which the invention here relates, employing the same type of catalyst. Young discloses that the reaction temperature may be kept at about 250–425°F., but teaches that the lower temperatures are preferred for producing alcohols rather than ethers. It is also stated that at temperatures above 450°F. the catalyst has a relatively short active life. In Table II of the patent, an increase in conversion as temperature is increased is clearly indicated.

The Plummer and Ipatieff references are not directed to the liquid phase hydration of propylene at all. Plummer is directed to the vapor phase conversion of ordinary naphthas to high octane motor fuels using heavy metal oxides as catalysts. The patent does contain a disclosure that after the process has been operating a while and the catalyst becomes partially spent, an "increase in the severity of reaction conditions" (e.g., by increasing reaction temperatures) is necessary in order to obtain the same degree of conversion.

Ipatieff, in a discussion of a third different process using a third different type of catalyst, mentions that the catalyst "soon became poisoned and necessitated an increase in the operating temperature."

## THE REJECTIONS

In rejecting the claims under 35 U.S. C. § 103, the examiner was of the opinion that:

It would be obvious to one skilled in the art to apply the concept of increasing the temperature of a catalytic reaction to compensate for a decrease in catalytic activity, alluded to by Ipatieff and enlarged upon by Plummer, to other catalytic reactions such as the hydration of olefins shown by Young.

With regard to the use of the formula to determine the daily temperature increment required to maintain the conversion level constant, the examiner considered that this was also "within the skill of a worker in the art."

As to the rejection under 35 U.S.C. § 112, the examiner conceded appellant's assertion that the scope of the description is as broad as the claims since both are couched in the same generic or descriptive terminology. He stated, however, that:

It is pointed out that one must look not only at the broad or descriptive terminology in a specification, but also to the concrete examples to determine the scope of the invention. It is clear from the examples that the formula appearing in claims 2 to 4 was derived under controlled conditions and it is not readily apparent that the formula is applicable outside those controlled conditions.

The Board of Appeals accepted every one of the examiner's positions. In addition, it went to one of the "background" references cited by appellant in his specification and pointed out that there, too, it is taught that conversion levels tend to diminish during operation of the process with the particular sulfonated ion exchange resin employed by appellant and also that an increase in temperature increases conversion. It was, therefore, concluded that it would be.

\* \* \* quite obvious to any chemical engineer that in order to maintain the same degree of conversion when the

latter decreases, the temperature may be raised sufficiently to compensate for such conversion drop, thus to anticipate appellant's claimed contribution.

The rejection under 35 U.S.C. § 112 was also sustained, the board, however, only applying that rejection to claims 2–4. Agreeing with the examiner that "numerous factors other than those set forth in the equation affect conversion," the board concluded that the validity of the equation in circumstances other than those specifically described in the specification examples "cannot be accepted."

## OPINION

The initial issue with regard to the rejection under section 103 is, quite evidently, the propriety of the combining of the disclosures of the two secondary references with that of the Young patent. Resolution of this question will necessarily depend upon a determination of "the art to which [the] subject matter [sought to be patented] pertains." It would appear manifestly artifical and improper, however, to conclude that the "art" to which the instant claimed subject matter pertains is the art of manufacturing isopropanol by the liquid phase hydration of propylene over a sulfonic acid ion exchange resin. The claimed invention deals with optimization of a chemical process and this is the particular province of the chemical engineer.[5] It is apparent that the secondary references here were not cited with the idea in mind that they contain information which would suggest to one working with the instant process a method for improving its efficiency, in which case it might be proper to ask why such references would be considered in the first place. Rather, as suggested in the board's opinion, they were cited in an attempt to prove that it would be within the level of ordinary skill of one trained in the

field of chemical engineering to compensate for a decreasing conversion rate provided by a catalyst the activity of which increases at higher temperatures by increasing the reaction temperature. We think this approach was proper.

Viewing the obviousness rejection in this light, we now consider its propriety. Looking first at the language of the claims, we find that they do, in fact, recite the asserted improvement as the single operative step of increasing the reaction temperature, the increase being accomplished incrementally and each increment being sufficient to substantially maintain the conversion level. We note that the claims require that the reaction process be a continuous one, employing a specific type of catalyst, and having a conversion level initially fixed by selecting pressure, liquid velocity and starting temperature values. While it is not expressly stated in the claims, we observe that the claimed improvement additionally requires that, with the exception of temperature, those factors which are initially selected to fix a conversion level (all of which would affect conversion if altered), are to be maintained constant during the process.

Given the known facts, which seem to be admitted by appellant, that the conversion level of the basic process tends to diminish with time and that this is caused by the catalyst becoming deactivated, it follows that claim 1 in particular, reads on nothing more than the general method of compensating for decreased catalyst activity in this process by increasing the reaction temperature. The Patent Office having established that one of ordinary skill in this art was aware that the activity of this particular catalyst did increase at higher temperatures and accepting the secondary references as properly applied to demonstrate the expected level of ordinary skill in the art,

5. According to *Webster's Third New International Dictionary* (G. & C. Merriam Co. 1969), chemical engineering is that branch of engineering which deals "with the development and application of manufacturing processes in which materials undergo changes in properties and that deals especially with the design and operation of plants and equipment to perform such work."

we are persuaded that the conclusion of obviousness was correct and the rejection of claim 1 on that ground must be affirmed.

With regard to claims 2–4, reciting the formula, we are similarly satisfied that the rejection under 35 U.S.C. § 103 was proper. The examiner made the observation that this formula was empirically derived, but unfortunately did not explain how he came to that conclusion or what effect that fact would have on the obviousness of the claimed improvement. Nevertheless, we do observe that the only variable in the formula is the temperature, every other parameter having a fixed value. Setting aside, for the moment, the position of the board that these claims are too broad since other factors would affect conversion, we are unable to see any other way that the formula could have been obtained except by observation and plotting of the daily temperature increments necessary to accomplish the result of maintaining the conversion level constant, and conversion therefrom to an algebraic equation. Claims 2–4 then, are also drawn to what we have already decided is the obvious expedient of increasing the temperature to offset catalyst deterioration in an otherwise constant process, with the additive factor of providing a method whereby the necessary daily increment based on fixed starting values may be predetermined. The recited formula is manifestly little more than a convenience factor. The specification does not indicate how it was determined and we find nothing in the record which sufficiently rebuts the examiner's position that such a determination would also be within the level of ordinary skill in this art. The rejection of claims 2–4 under 35 U.S.C. § 103 is also affirmed.

Having reached the conclusion that the rejection of the claims under 35 U.S.C. § 103 should be sustained, we make no decision regarding the rejection under section 112. The decision of the board is affirmed.

Affirmed.